IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ILLA L. GARCIA, and
MARY A. JASSO,

        Plaintiffs,               No. CIV S-07-2770 GEB EFB PS

     vs.

CALIFORNIA DEPARTMENT OF
FORESTRY AND FIRE PROTECTION,
CALIFORNIA DEPARTMENT OF
GENERAL SERVICES AND              FINDINGS AND RECOMMENDATIONS
TELECOMMUNICATIONS DIVISION,
CALIFORNIA DEPARTMENT OF
JUSTICE, et al.,

        Defendants.

_____/

       Defendants' third amended motion to dismiss plaintiffs' complaint was submitted for

decision on the papers by order of this court filed August 25, 2008.[1]  For the following reasons,

the court recommends that defendants' motion be granted, and that plaintiffs' complaint be

dismissed without leave to amend.

////

---

     [1]  This case, in which the plaintiffs are proceeding *in propria persona*, is referred to the
undersigned under Local Rule 72-302(c)(21), pursuant to 28 U.S.C. § 636(b)(1).  This case is
related to *Mary A. Jasso, et al. v. Citizens Telecommunications Company of California, Inc., et
al.*, Civ. S-05-2649 GEB EFB PS.

<u>BACKGROUND</u>

In their complaint filed December 26, 2007, plaintiffs allege that they previously worked for defendant California Department of Forestry and Fire Protection ("CDF"), as seasonal lookouts at the Likely Mountain Lookout site ("Likely Mountain") in Lassen County, California. Plaintiff Illa Garcia worked there for three fire seasons from 2000 through 2002; plaintiff Mary Jasso worked there for eleven fire seasons from 1992 through 2002. Complaint, ¶¶ 7, 8. According to the complaint, CDF and defendant California Department of General Services Telecommunications Division ("GSTD"), installed, operated and leased at Likely Mountain "various antennae which do and/or did emit and radiate toxic radiofrequency, microwave and electromagnetic radiation" during the years 1992 through 2002. *Id*. at ¶ 6. Plaintiffs allege that these telecommunication devices emitted harmful radiation which created larger radiation fields, and this radiation was transmitted to plaintiffs, particularly through the metal structures and pieces of equipment with which they were required to work.[2] *Id*. at ¶¶ 10, 11. Plaintiffs allege that they both became ill in July 2002, Jasso becoming permanently disabled in October 2002, Garcia becoming permanently disabled in April 2004. *Id*. at ¶¶ 14, 15. Based on their theory formed November 2003 that their illnesses were caused by the radiation to which they were exposed while working at Likely Mountain, both plaintiffs obtained medical testing beginning February 2004, pursuant to which "the Plaintiffs were found to have toxic brain and blood cell damage, tumors, cataracts, tremors, loss of hearing, breathing difficulties, paralysis and other physical damage to their bodies." *Id*. at ¶¶ 16, 17; *see also* ¶ 26 ("plaintiffs have, and/or are

---

[2] Plaintiffs assert that the radiation fields "couple to and/or eradiate off, nearby metal structures and do couple to the human body, having a predilection for water based biological organs and said radiation fields then genera[te] high radiofrequency voltage and create hazardous shock/burns and injury for those so exposed. Plaintiffs do allege they suffered continuous daily [] shock/burn phenomena when they touched metal surfaces at LMT, including the kitchen sink in the living quarters provided by defendant CDF." Complaint, at ¶ 10. Plaintiffs list the several metal objects they were required to inhabit and handle, e.g., the LMT lookout tower and temporary living quarters, transmitting equipment, generator, binoculars, map ring, chairs and vehicles. *Id*. at ¶ 11.

already suffering from memory loss, confusion, anxiety, depression, time lapses and Alzheimer's and dementia-like symptoms").

Plaintiffs allege that defendants CDF and GSTD were required to post warnings of radiation exposure at LMT, and to implement other safety procedures (e.g., verbal warnings, preventive training) that would have provided plaintiffs with a hazard-free work environment. *Id.* at ¶ 6. Plaintiffs allege that once they informed defendants of their medical problems, these defendants, along with defendant California Department of Justice, and nonparties California Department of Transportation, California Insurance Fund, California Fire Fighters, and others, "conspir[ed] to conceal the true facts of radiation levels that could be found at [L]ikely Mountain between the years 1992 through 2002," and submitted "false and misleading documents and statements to the Courts and regulatory entities . . . that are in place to protect the plaintiffs' interests." *Id.*

Plaintiffs allege three causes of action pursuant to 42 U.S.C. § 1983, based on their broad contentions they were denied due process and equal protection by defendants: (1) negligent failure to protect plaintiffs from injury (also relying on 18 U.S.C. § 242); (2) knowing failure to warn and protect plaintiffs from injury (also relying on 18 U.S.C. §§ 242 and 1864(a)(3)); and (3) conspiracy to submit false and misleading information (also relying on 18 U.S.C. § 241 and 242, and 42 U.S.C. § 1985). Plaintiffs each seek damages of $12,500,000, with interest, and an award of fees and costs.

Defendants move to dismiss plaintiffs' complaint on the grounds that this court does not have subject matter jurisdiction, and that the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6).

////
////
////
////

Defendants recount the history of this action in state court, as follows.[3]  On July 25, 2005, plaintiffs filed separate actions against these and other state agency defendants in superior court.  Jasso alleged four causes of action:  dangerous condition of public property, failure to protect, strict liability for ultrahazardous activity, and concealment of a dangerous condition.  Garcia alleged one cause of action, negligence per se.  *See* Decl. of Deputy Attorney General James W. Walker, Dckt. No. 5, Exh. C, at pp. 3-4.  In both cases, defendants' demurrers were sustained on the ground that plaintiffs' sole and exclusive remedy against the state is through the state worker's compensation system.  Accordingly, judgments were entered against both plaintiffs.  *See* Walker Decl., Exh. A (*Garcia v. Cal. Dept. of Forestry et al.*, Case No. 42425, Lassen County Superior Court, Order and Judgment entered July 5, 2006), and Exh. B (*Jasso v. Cal. Dept. of Forestry et al.*, Case No. 41697, Lassen County Superior Court, Order and Judgment entered August 24, 2006).  Superior Court Judge Bradbury reasoned in pertinent part that, "[t]elecommunications does not rise to the level of conduct contrary to public policy such that an exception to the exclusive remedy of worker's compensation is applicable.  (Citations)."  *Id.* at Exh. B, at p.2.

The demurrers were upheld in a consolidated appeal to the California Court of Appeal, Third Appellate District.  *Id.* at Exh. C (Case Nos. CO53667 and CO53793).  In a decision filed May 25, 2007, Justice Raye, writing for a three-judge panel, analyzed the "public policy" exception to the exclusivity of the worker's compensation system in considering plaintiffs' contentions based on state and federal statutes and regulations, specifically, 8 C.C.R. § 8618, 47 U.S.C. § 1.1307, and 18 U.S.C. § 1864.  Citing numerous cases, Justice Raye concluded:

---

[3]  The court takes judicial notice of the state court procedural history, *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987), and the matters of public record from that litigation, including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986).  *See, generally, United States v. Ritchie*, 342 F. 3d 903, 907-908 (9th Cir. 2003) (a court may consider such materials without converting a motion to dismiss into a motion for summary judgment); *see also* Fed. R. Evid. 201 (a court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

4

While plaintiffs cite various laws and regulations they assert defendants violated, they cite no authority, and we have found none, for their proposition that these types of statutory violations regarding operations of telecommunications towers are considered conduct contrary to fundamental public policy of the state as that concept has been narrowly construed in both workers' compensation and wrongful termination cases. Particularly in workers' compensation cases, the exception to the rule of exclusivity is narrowly drawn to preserve the legislative balance securing a prompt recovery for injured workers while simultaneously limiting the employers' exposure to tort liability. . . . We therefore conclude that because plaintiffs, state employees, affirmatively allege they were injured while in the course and scope of their employment, no civil action will lie and the trial court properly sustained the demurrer. . . . [T]he exclusive remedy of workers' compensation bars a state employee's claims against another state agency. All defendant state agencies were properly dismissed.

*Id.* at pp. 4, 9-10, 12

The Court of Appeal also rejected appellant's civil rights claims, reasoning:

Plaintiffs also make repeated references to violations of their civil rights, citing to various provisions of the state and federal Constitutions. We are somewhat perplexed as to the meaning of these allegations. Their sweeping allegations that defendants' operation of the telecommunication facilities, failure to warn, and failure to monitor radioactivity levels, violated their inherent rights to be free of harm, if accepted, would dismantle the workers' compensation system because every injured employee would contend his or her employer's harmful conduct violated the fundamental public policy of the state as embodied in the Constitution. Courts have been careful to narrowly construe the exception to exclusivity so as not to intrude into the Legislature's constitutional prerogative to implement a workers' compensation system.

*Id.* at pp. 10-11

Thereafter, the California Supreme Court summarily denied review, *see* Request for Judicial Notice, filed by Deputy Attorney General James W. Walker, Dckt. No. 5, Item 2, and the U.S. Supreme Court denied plaintiffs' petitions for writ of certiorari and for rehearing. *Id.* at Item 3.

LEGAL STANDARDS

A. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1): Lack of Subject Matter Jurisdiction

"When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the

5

existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corporation v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted).

Different standards apply to a 12(b)(1), motion, depending on the manner in which it is made. *See, e.g.*, *Crisp v. United States*, 966 F. Supp. 970, 971-72 (E.D. Cal. 1997). If the motion attacks the complaint on its face, generally referred to as a "facial attack," the court considers the allegations of the complaint to be true, and plaintiff enjoys "safeguards akin to those applied when a Rule 12(b)(6) motion is made." *Doe v. Schachter*, 804 F. Supp. 53, 56-57 (N.D. Cal. 1992). On the other hand, if the motion makes a "factual attack" on the truth of the jurisdictional facts underlying the complaint, generally referred to as a "speaking motion," the court need not presume the factual allegations of the complaint to be true, but must employ the evidentiary standards for considering a motion for summary judgment, furnishing all parties an opportunity to supplement the record. *See, e.g., Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F. 2d 730, 733 (9th Cir. 1979); *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F. 2d 1553, 1558 (9th Cir. 1987). However, this "conversion" rule does not apply when, as here, "the additional facts considered by the court are contained in materials of which the court may take judicial notice." *Barron v. Reich* ,13 F.3d 1370, 1377 (9th Cir. 1994) (citation omitted). Since this court, in considering the instant motions, relies exclusively on the pleadings in this case, the judicially noticed orders and pleadings filed in plaintiffs' state court proceedings, *see* n. 3, *supra*, and plaintiffs' currently pending related federal case, *see* n. 1, *supra*, defendants' challenge to this court's subject matter jurisdiction remains facial, and the court's review rests on the traditional standards applicable thereto.

B. <u>Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6):  Failure to State a Claim</u>

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it

must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "'The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.'" *Id.*, quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) (internal punctuation omitted). Rather, to avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008), quoting *Bell*, at 127 S.Ct. at 1974.

Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The complaint's factual allegations are accepted as true. *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *NOW, Inc. v. Schiedler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Mullis,* 828 F.2d at 1388. The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. *Mack*, 798 F.2d at 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). Finally, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences or

unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a *pro se* litigant is entitled to notice and an opportunity to amend the complaint before dismissal without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir.2000) (*en banc*); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987).

DISCUSSION

    A. <u>Lack of Subject Matter Jurisdiction</u>

        1. <u>Application of the *Rooker-Feldman* Doctrine</u>

Plaintiffs' first and second causes of action sound in tort, while their third claim asserts abuse of powers associated with the alleged concealment of information in the state court proceedings. At the heart of plaintiffs' claims is the implicit request that this court overturn the reasoned conclusion of the state courts that plaintiffs' exclusive remedies, at least against defendants CDF and GSTD, lay with the state workers' compensation system. However, as explained below, this court is without jurisdiction to reconsider this conclusion.

  "The *Rooker-Feldman* doctrine is a well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments. *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir.2007); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 [] (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 [] (1923). We have recognized that '[t]he clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.' *Henrichs*, 474 F.3d at 613. (internal quotation marks omitted). [¶] However, *Rooker-Feldman* may also apply where the parties do not directly contest the merits of a state court decision, as the doctrine 'prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a

*de facto* appeal from a state court judgment.' *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1139 (9th Cir. 2004) (*citing Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003)).  A federal action constitutes such a *de facto* appeal where 'claims raised in the federal court action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules.' *Bianchi*, 334 F.3d at 898.  In such circumstances, 'the district court is in essence being called upon to review the state court decision.' *Feldman*, 460 U.S. at 483 n. 16 [].'' *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858 -859 (9th Cir. 2008).  The doctrine applies to individuals who were parties to the state court proceeding.  *Johnson v. De Grandy*, 512 U.S. 997,1006 (1994).

Plaintiffs' first and second claims, alleging negligent and intentional torts, were thoroughly considered and rejected by the state courts, as least as to common defendants California Department of Forestry and Fire Protection, and California Department of General Services Telecommunications Division.  Recasting these claims as federal civil rights violations does not avoid application of the *Rooker-Feldman* doctrine nor, therefore, the conclusion of the state courts that plaintiffs' exclusive remedies lay with the state workers' compensation system.

Nor does plaintiffs' third claim avoid application of the *Rooker-Feldman* doctrine, although for different reasons.  Plaintiffs contend that defendants CDF and GSTD, upon learning of plaintiffs' allegations of radiation exposure and injuries, "failed to investigate or police themselves or their lessees." Compl., ¶ 31.  Plaintiffs state that they themselves were required to notify defendants' lessees, Modoc National Forest Service and Federal Bureau of Land Managment, in April 2004 of the safety issues at Likely Mountain.  Plaintiffs contend that defendants and/or their employees gave false reassurances to government agencies, and produced documents reflecting tests conducted in February 2005 and September 2006 which found that radiation levels on Likely Mountain did not exceed Federal Communications Commission standards.  Plaintiffs contend that defendants submitted these allegedly false test

results and documents "to various Courts and government agencies as proof the plaintiffs were not injured," and "fraudulently conceal[ed] the true levels of radiation and the hazardous conditions," on Likely Mountain, *id.* at ¶¶ 6, 28-37, thus obstructing justice by defrauding the courts, as well as hindering plaintiffs' efforts to obtain economic relief and medical care. Apparently in response to the finding of Justice Raye that "[p]laintiffs do not allege a fraudulent cover-up, as in *Johns-Manville [Products Corp. v. Superior Court*, 27 Cal.3d 465 (1980)], that aggravated their injuries once defendants became aware of the radioactive poisoning," Exh. C, at p. 9,[4] plaintiffs now expressly make that contention, an allegation so broad as to include newly added defendants California Attorney General's Office and the state Attorney General.

A federal suit alleging extrinsic fraud in a state court proceeding is not barred by *Rooker-Feldman*. *See, e.g., Kougasian, supra,* 359 F.3d at 1140-41. (However, an allegation of extrinsic fraud does not, alone, create federal subject matter jurisdiction.) "Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud. *Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Id.* at 1141. "The focus of

_____

[4] While not framed as a "fraudulent coverup" in state court, plaintiffs' allegations of intentional malfeasance by defendants were squarely presented to the state courts. The Court of Appeal opinion recounts plaintiffs' claims of defendants' "egregious misconduct," and that "defendants 'concealed all facts of the hazardous and dangerous' exposure to radiation on Likely Mountain," Exh. C, at pp. 2, and 3. The court specifically noted that:

> [T]he Labor Code does not exonerate defendants from any malfeasance. Rather, it establishes a different forum for the redress of the injuries Jasso [and Garcia] sustained during the course and scope of her employment. If, as plaintiffs allege, defendants violated both state and federal statutes, as well as state and federal constitutional rights, and abrogated their duties to protect, warn, and safeguard the employees who manned the lookout towers on Likely Mountain, they should be held accountable for their dereliction of duty. We do not condone either any intentional or negligent conduct. But the propriety of their conduct is not before us; we consider only the venue in which their conduct will be addressed.

*Id.* at pp. 11-12.

such claim is not on whether a state court committed legal error, but rather on a wrongful act by the adverse party." *Reusser, supra*, 525 F.3d at 859 (citations and internal quotations omitted).

Plaintiff's extrinsic fraud claim lacks foundation both in the present complaint and as set forth in plaintiffs' related action also pending before this court. In this case, the complaint fails to allege sufficient facts upon which to base a claim for extrinsic fraud. They offer no specific facts or particularized details in support of their allegation that the 2005 and 2006 state test results, or documents prepared thereon, were inherently "false and misleading," nor that radiation levels on Likely Mountain were impermissibly elevated during the years 1992 to 2002. More significantly, as discussed in plaintiffs' related case before this court, the absence of *any* evidence of radiation testing on Likely Mountain for the relevant period, as independently concluded by the state court in separate actions involving these plaintiffs – and, most significantly, the failure of plaintiffs to appeal the state court decisions on the extrinsic fraud grounds they assert were then apparent – decisively undermine plaintiffs' extrinsic fraud claim in this court.

Since plaintiffs fail to state a prima facie claim for extrinsic fraud, all of their claims against defendants California Department of Forestry and Fire Protection, and California Department of General Services Telecommunications Division, are barred by the *Rooker-Feldman* doctrine, and this court is without jurisdiction to consider these matters.

### 2. Eleventh Amendment Immunity

#### a. State Agency Defendants

Moreover, this court is without subject matter jurisdiction to consider plaintiffs' action against defendant state agencies California Department of Forestry and Fire Protection, the California Department of General Services Telecommunications Division, *and* the California Department of Justice, based on principles of sovereign immunity.

Neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Rather, the Eleventh

Amendment to the U.S. Constitution protects states and state agencies from § 1983 liability absent their clear and unequivocal waiver and consent to suit. *Quern v. Jordan*, 440 U.S. 332, 337-345 (1979). The Eleventh Amendment's protection of state sovereign immunity extends to suits by citizens against their own states. *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 72-73, (2000). "The Eleventh Amendmen's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature." *Brooks v. Sulphur Springs Valley Electric Cooperative*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 (1984) (fn omitted). *See also In re Pegasus Gold Corporation*, 294 F.3d 1189, 1195 (9th Cir. 2005) (agencies of the state are immune from private damage actions in federal court).

Accordingly, the Eleventh Amendment provides an alternative basis for dismissing plaintiffs' claims, without leave to amend, against the California Department of Forestry and Fire Protection and the California Department of General Services Telecommunications Division, as well as the California Department of Justice.

### b. Official Capacity Suits Against Individual State Defendants

The remaining nine defendants (the court does not consider "Does 1-100"), all state officials or employees,[5] are sued in both their individual and official capacities. However, a suit

---

[5] The remaining nine defendants are:

1. Jerry Brown, California Attorney General;
2. Catherine Guess, Deputy Attorney General;
3. Barry Hemphill, Deputy Director, California Department of General Services Telecommunications Division;
4. Glen Nash, Engineering Services Section Head for California Department of General Services Telecommunications Division;
5. Richard Williams, Senior Telecommunications Engineer, California Department of General Services Telecommunications Division;
6. Michael D. Ensminger, Associate Engineer, California Department of General Services Telecommunications Division;
7. Al Muir, Operations Region 2 Manager, California Department of General Services Telecommunications Division;
8. Rich Zanni, Area No. 2 Supervisor, California Department of General Services Telecommunications Division; and,

against a state official is the same as a suit against the state, and a state official acting in his or her official capacity is not a "person" subject to liability under § 1983. *Will, supra*, 491 U.S. at 71. The exception is an official-capacity suit for prospective injunctive relief, *id.*, at 71, n. 10, which plaintiffs do not seek in this action and which would not compensate them for their alleged injuries.

Accordingly, this court is without jurisdiction to consider plaintiffs' claims against the individually named defendants in their official capacities, and these defendants must also be dismissed.

The court therefore concludes that it is without subject matter jurisdiction to consider plaintiffs' claims against any defendant state agency or any state employee in their official capacity.

B. <u>Failure to State a Claim</u>

What remains of plaintiffs' complaint is an amalgam of civil rights claims against state officials and employees in their personal capacities only. Because *pro se* litigants are generally entitled to notice and an opportunity to amend their complaints before dismissal without leave to amend, *Lopez. v. Smith*, 203 F.3d at 1127-28, the court proceeds to demonstrate that no amendment can cure the defects of the instant complaint.

While money damages are available against officials in their personal capacity, a showing of personal involvement in the alleged violations is required.[6] The complaint makes no assertion of personal involvement by any individually named defendant in the conduct

---

9. Brad Lutts, Unit Chief Modoc Lassen Unit, California Department fo Forestry and Fire Protection.

[6] "Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984)." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

challenged by plaintiffs – significantly, none of the individually named defendants are mentioned other than in the caption of the complaint. Moreover, as set forth below, the complaint does not imply any reasonable basis upon which plaintiffs can state a claim of personal involvement by any individually named defendant.

### 1. Failure to State a Claim under 42 U.S.C. § 1983

Plaintiffs' § 1983 claims[7] are premised generally on the alleged violation of plaintiffs' rights to due process and equal protection under the U.S. Constitution; however, neither right creates a cause of action based upon these facts.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." Plaintiffs claim that they have been deprived "of life and memories of life" and "denied the freedom to choose what toxic exposure risks they would allow themselves to be exposed to." Compl., ¶ 22. However, "[m]ere negligence or lack of due care by state officials in the conduct of their duties does not trigger the substantive due process protections of the Fourteenth Amendment and therefore does not state a claim under section 1983." *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Similarly, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiffs claim

---

[7] Section 1983 provides that "(e)very person who, under color of any statute of any state . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." Section 1983 does not, in itself, confer any substantive rights, but provides a separate right of action for violation of substantive rights secured by other federal statutes and the federal constitution. *See Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). To establish a prima facie case under § 1983, plaintiffs must establish that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).

that they were "denied the equal protection of the laws enacted to protect those who worked at telecommunication sites."  Complaint, ¶ 22.  However, plaintiffs do not contend or otherwise demonstrate that they are members of a protected class and do not, therefore, state an equal protection claim.  The same omission undermines plaintiffs' claims pursuant to 42 U.S.C. § 1985.[8]

### 2. Failure to State a Claim Under Federal Criminal Statutes

Common to each of plaintiffs' causes of action is the contention that defendants violated the federal criminal statutes set forth at 18 U.S.C. §§ 241, 242, or 1864(a)(3).  However, these statutes establish criminal penalties for violation of an individual's civil rights; they do not create private rights of action.  *See, e.g., Peabody v. United States*, 394 F.2d 175, 177 (9th Cir.1968).

Accordingly, plaintiffs do not, and cannot, state a claim pursuant to 18 U.S.C. §§ 241, 242, or 1864.

### 3. Failure to State a Claim Under OSHA

Plaintiffs rely on several state and federal Occupational Safety and Health Act ("OSHA") provisions, e.g., the "General Duty Clause" of Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 654 (setting forth the duties of employers and employees), including federal OSHA regulations concerning the telecommunications industry, specifically, 29 C.F.R. § 1910.268(a)(3), (c)(1)(p)(2) and (3).  However, these provisions do not create private rights of action.  *See*, *e.g.*, *Crane v. Conoco, Inc.,* 41 F.3d 547, 533 (9th Cir. 1994); *see also International Union, et al. v. Johnson Controls, Inc.*, 499 U.S. 187, 214 (1991) ("OSHA does not provide a private cause of action for violations of OSHA or its implementing regulations).

*////*

---

[8]  Plaintiffs rely on 42 U.S.C. § 1985 in support of their allegation that defendants conspired to submit false and misleading information to the state courts.  However, plaintiffs do not contend that the alleged conspiracy was motivated by racial or other invidious discrimination.  *See* 42 U.S.C. § 1985(3); *see also, e.g.*, *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir.1992).  Accordingly, plaintiffs do not state a claim pursuant to 42 U.S.C. § 1985.

### 4. Failure to Allege any Other Federal Claim

The only remaining federal authority relied on by plaintiffs are the FCC regulations establishing maximum human exposure limits for radio frequency radiation, presented in support of their extrinsic fraud contention, 47 C.F.R. §§ 1.1310, and 1.1307(b). The court has addressed the lack of foundation for this contention and, in the related case noted *supra*, addresses the failure of plaintiffs to state any claim under these provisions.

To the extent that plaintiffs' tort claims, based on the alleged negligent and intentional failure of defendants to protect plaintiffs, may be made against an individual defendant, they – and defendants' vigorous statute of limitations defenses – are grounded in state common law. Since a federal court should not exercise pendent jurisdiction over state claims in the absence of federal subject matter jurisdiction, *see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), there remains no basis for this action to proceed in this court.

### CONCLUSION

For the foregoing reasons, this court finds that the facts of this case – including their full consideration by the state courts against the principal defendants – demonstrate no reasonable possibility that plaintiffs can amend the present complaint to demonstrate this court's subject matter jurisdiction or state a claim upon which relief can be granted.

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss, Dckt. No. 18, be granted,

2. Plaintiffs' complaint be dismissed without leave to amend; and

3. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the

specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158

F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 12, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE